By the Court.

This is an action brought by ⅜ fche syndics of the creditors of a late commercial house, against one of the partners of the firm, to money by him embezzled, some time before the failure of the house.
The embezzlement has been proved, in the court below, and is not even attempted to be denied. The defendant, now the appellant, rests his defence upon a variety of other grounds, all of which may be reduced to two principal objections. One to the nature of the action, the other to. the want of a cause of action m the plaintiffs.,
I, The objection to, the nature of the action is tins* that ⅛ is an. action of fraud,, and that tbfc- *231 plaintiffs, now the appellees, had. no right to bring such an action, either'in behalf of the creditors, because no fraud has been committed against them,, or in behalf of the partner of the defend dant, because no such action lies between part-ncrs. , '
East. District.
Feb. 1814.
If this suit had been brought, in the Form of an action of fraud, both to recover from the appellant the sum embezzled, and to have him punished for the fraud, as the appellees’ counsel has alleged, it ought, indeed, to be dismissed, not from any want of right in the appellees, but because such actions are unknown to our law : and, because any attempt to introducé among us the multifariousness of Roman jurisprudence ought to be discountenanced, as tending to perplex the suitors and embarrass the administration of justice. But, that it is a suit simply for the recovery of money, does appear on the face of the petition. The fraud is, indeed, alleged; but only to establish the nature of the right to recover.
The petition is such as the act formerly regulating the practice Of the superior court, and now that of the district courts, require it to be. It states the cause of action and concludes with a prayer,for relief, suited to the circumstances of the case. The action was, therefore, properly instituted, and the objection to its form is groundless.
II. The other objection is to the want of *232 a cause 9^ action in the plaintiffs. This is the point on which turns the whole defence, and with which are connected the different exceptions, taken in the „ co urse of the trial. i '
In' the plea are two allegations : one is that the estate surrendered was more than sufficient tó pay the debts of the partnership—the other that the sums received by the syndics, since the surrender, exceed in amount the total amount of the debts.
L. Against the first of these allegations, it is contended, that the person, who makes a cession of his goods, is bound to surrender them all ; and that, should he retain an y part of them, the syndics of his creditors have a right to compel him to give it up, although the property surrendered should appear to be more than sufficient jto pay his debts.
This is certainly sound doctrine. The cession of goods must be a cession of all the- goods, moveable and immoveable, rights and credits of the debtor. It matters not, whether their proceeds may exceed eventually the amount of the debts. The whole property must be surrendered, to be administered and disposed of, according to law. The creditors, by their syndics, must be put in possession of the whole. They have a right to collect every portion of the estate, which they may come at. These are principles to be found every where, and which it would be ridiculous to support by„ quotations of authorities. , In this case, there *233 fore, whether the appellant he considered as retain- ' , c , 1 • mg part ot the estate or the partnership, or as one of the debtors of the partnership, for so much of its estate, as he has converted to his own use, the creditors have undoubtedly the right of calling on it . him tor the amount.
2. But, it is said that, if the syndics had once that right, it has become extinct, now that they have received more than the amount necessary to pay ail the debts.
- Should this be the fact, it would be proper to examine whether as soon as the syndics of the creditors of a bankrupt have collected money enough to pay all hig debts, their right of possessing, the estate ought to cease, or whether it ought to continue until the administration be completely closed and their accounts rendered. But, before entering into that investigation we must ascertain whether it be really true that the syndics of Duncan and Jackson have collected funds, sufficient to pay all the debts of the firim
W i t h a view to prove this, the appellant had put to the appellees certain interrogatories, which he complains have not been so completely answered, as to enable the court to discover the truth. He contends that, had those interrogatories been fully and categorically answered, he would have been able to shew that the appellees have really received more money than is necessary to pay every lawful *234 of the firm. In support of this assertion, he maintains that part of the monies by them col-lccted, has been misapplied; that, instead ofera-ploying them to the satisfaction of the creditors, mentioned in the schedule, they hay? without any authority, applied' them, to the payment of other debts, discovered since the surrender. Blit, it does appear to this court, notwithstanding the alleged insufficiency of the answer to the interrogatories, enough is exhibited to establish that the funds, as yet collected, fall short of the amount of debts,, even as acknowledged in the bilan.
It is not necessary here to inquire how much remains to be collected; for the property to be disposed of may perish, or the funds to be recovered may be lost, before .they come to the hands of the syndics. What it is importapt to ascertain is how much they have actually received. Upon this, the answer of the appellees is precise. The account sworn to by them and the statement of facts shew that the monies hitherto collected amount to the sum of S 38,390 : the debts, as mentioned in the bilan, are rated at 55 37,600 ; leaving a balance of S 790. But the costs and expences alone, incurred since the surrender, have absorbed several thousand dollars. Therefore, independently of any payment to creditors, not mentioned in the bilan, there is an actual deficiency to pay the debts there recognised. Add to this, that the amount of debts and credits, as mentioned in the bilan, is by no *235 means definite—that it is merely guessed át, and therefore, left to be afterwards settled by the syn-dies—that the syndics, on a close examination of t ; . the affairs of the firm, have found additional debts, to the amount of ⅝ 41,000, as appears from thfe deposition of their attorney in, fact and of the clerk of the late firm of Duncan and Jackson ; and it will be seen that the sums hitherto received fall far short of the real amount of debts. The syndics, indeed, have, of their authority, recognised debts, of which no special mention is made in the schedule, and they have also, without waiting for the decree of distribution, required by law, proceeded to make payments. This is irregular and they may be called to an account for it. If any of these debts were wrongfully paid, they are answerable to their constituents, the creditors. But this does not alter the case as to the evident insufficiency, no matter to what amount, of the monies hitherto collected.
The administration of the syndics of Duncan and Jackson then is not at an end. They have more to pay, than they have actually received i and so long as that is the case, their right to collect the funds of the estate cannot be questioned.
It is ordered that the judgment of the parish court be affirmed with costs.